## United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3816

_____

United States of America

*Plaintiff - Appellee*

v.

Eric Deangelo Griggs, also known as E.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: September 21, 2022
Filed: November 21, 2022

_____

Before GRUENDER, MELLOY, and ERICKSON, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury found Eric Griggs guilty of several drug offenses including distribution of a controlled substance resulting in death. The district court[1] applied an

_____

[1] The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

enhancement for obstruction of justice and sentenced Griggs within the Guideline range.

Griggs appeals the denials of a motion to suppress, motion for a directed verdict, and motion for a new trial. Griggs also appeals his sentence. We affirm.

## I. Background

On August 31, 2018, Abigail Wilder made four phone calls to her boyfriend, Jeffrey Schmitt. Schmitt was in a county jail, so all of the phone calls were recorded. Wilder told Schmitt she was driving to meet a supplier and buy heroin. Later, Wilder told Schmitt she had given her supplier a ride and stayed in the car while he sold to another individual. That night Wilder died from a heroin overdose.

When police found Wilder the next morning, her cell phone was next to her body. The investigators obtained a search warrant for Wilder's phone and spoke to Schmitt in the county jail. Schmitt provided investigators with the code to unlock Wilder's phone and told investigators that Wilder communicated with her supplier via text message or Facebook messenger. Schmitt did not know the name of the supplier Wilder had met the day before. However, Schmitt told investigators the supplier was a "skinny black male" that was likely the last person Wilder spoke to on Facebook messenger.

Investigators found communications from August 31, 2018, between Wilder and a Facebook account associated with "Eric Griggs." Investigators recognized the name from previous cases. Investigators determined the communications between Griggs and Wilder coincided with the conversations Wilder had with Schmitt.

On September 1, 2018, investigators posing as Wilder began using Wilder's phone to message Griggs in an effort to replicate the sale from the previous night.

-2-

Griggs responded and agreed to a time and location to meet and sell heroin. When Griggs messaged to indicate he had arrived at the agreed-upon location, an investigator identified and approached Griggs's car. Investigators detained both the driver and passenger, Griggs. Griggs was Mirandized and searched. The driver gave permission to search the car, and investigators found heroin. Investigators seized Griggs's phone and applied for a warrant. In the affidavit, the officers stated Schmitt had told them Wilder's dealer was named Eric Griggs. The warrant was granted.

Griggs filed motions to suppress two categories of evidence: (1) evidence of the conversation between himself and investigators using Wilder's phone after Wilder had died, arguing the officers had violated the Wiretap Act; and (2) statements he made to the police and evidence collected from his phone after being apprehended. Griggs asserted a seizure occurred when officers approached his parked car in violation of the Fourth Amendment. Griggs also argued the warrant affidavit falsely stated Schmitt had identified Wilder's dealer by name as Eric Griggs. The district court denied the motions.

At trial, the government presented evidence from multiple sources including: Wilder and Griggs's phones, Griggs's Mirandized statements, a prior cocaine conviction, Schmitt and Wilder's conversations, and witness testimony about Wilder's drug use. One of the government's witnesses was Preston McCully, a friend of Wilder. McCully testified that he did not take drugs with or sell drugs to Wilder. On cross examination however, Griggs presented text messages showing Wilder had inquired about buying drugs from McCully on August 13, 2018. After presentation of the state's case, Griggs moved for a directed verdict. The district court denied the motion. Griggs did not present a defense. In his closing argument, Griggs argued that McCully could have supplied the heroin that killed Wilder. The jury found Griggs guilty of one count of distribution of a controlled substance resulting in death and two counts of use of a communication facility to commit a felony drug crime.

The jury found Griggs not guilty of one count of possession with intent to distribute a controlled substance and aiding and abetting the same.

Griggs moved for a new trial alleging: (1) the weight of the evidence was contrary to the guilty verdicts, (2) the government used perjured testimony, and (3) various other errors by the court violated his constitutional rights. The district court denied the motion. The district court applied a two-level increase for obstruction of justice and sentenced Griggs to 480 months in prison, a within Guidelines sentence.

## II. Discussion

### A. Suppression

Griggs appeals the denial of his motion to suppress. We review the denial de novo and underlying factual determinations for clear error. United States v. Milliner, 765 F.3d 836, 839 (8th Cir. 2014).

Griggs claims the government's use of Wilder's phone to contact Griggs and set up a heroin sale was a violation of the Wiretap Act and therefore should be suppressed. The Wiretap Act makes it unlawful for an individual to, among other things, "intercept [] any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a). Intercept is defined as "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The Wiretap Act has several exclusions including: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. 2511(2)(c). Because the officer using Wilder's phone was a government agent participating in official acts for an investigatory purpose, the officer was acting under color of law. See United States

-4-

v. Rich, 518 F.2d 980, 985 (8th Cir. 1975). The officer was also a party to the conversation. See S. Rep. No. 90–1097, at 93–94 (1968) (party is "the person actually participating in the communication"); In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 143 (3d Cir. 2015) ("In the context of the statute, a party to the conversation is one who takes part in the conversation."(citations omitted)). Given that the officer was a party to the conversation and was operating under color of law the conversation was not "intercepted." "The Wiretap Act is a wiretapping statute, and just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping." In re Google 806 F.3d at 144.

Next, assuming the approach to the vehicle was a seizure, officers had probable cause to approach the car. Evidence supporting probable cause included a description of Griggs from Wilder's boyfriend, the photo attached to the Facebook account Griggs used to message Wilder, investigators' personal experiences with Griggs in the past, and the circumstantial evidence of when the car pulled into the parking lot.

Finally, the incorrect statement in the warrant affidavit—that Schmitt identified Griggs by name—does not require suppression of evidence collected from the phone. Even if "the affiant [] 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth,'" suppression is not required when probable cause still exists without the false statement. United States v. Daigle, 947 F.3d 1076, 1083 (8th Cir. 2020) (alteration in original). There was sufficient evidence in the affidavit to obtain a warrant without Schmitt identifying Griggs by name.

## B. Trial Errors

We review denial of a motion for a new trial for abuse of discretion. United States v. Malloy, 614 F.3d 852, 862 (8th Cir. 2010). Griggs alleges several trial errors including use of perjured testimony, misleading and incomplete jury

instructions, and inclusion of inadmissible evidence. In addition, Griggs asserts the verdict was against the weight of the evidence.

McCully falsely testified that his relationship with Wilder did not involve drugs. Griggs argues the prosecution's use of this testimony requires a new trial. As discussed above, the evidence of McCully's lie came out on cross examination. If the court finds the government knowingly, recklessly, or negligently used false testimony and there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury" then a new trial should be granted. United States v. Tierney, 947 F.2d 854, 861 (8th Cir. 1991) (citation omitted). Even assuming the testimony was used knowingly, recklessly, or negligently, no reasonable likelihood exists that the jury's judgment was affected. McCully's lies were exposed on cross examination allowing the jury to properly weigh his credibility. Because Griggs described McCully as a possible alternative source of the drugs during closing arguments, he placed the issue of McCully's credibility squarely in the hands of the jury.

Next, we review the district court's jury instructions for an abuse of discretion. See United States v. Koech, 992 F.3d 686, 691 (8th Cir. 2021). "[A]dequate jury instructions must, 'taken as a whole adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government.'" United States v. Pereyra-Gabino, 563 F.3d 322, 328 (8th Cir. 2009) (citation omitted). As long as the instructions accurately state the law, the court is not required to use specific language suggested by defense counsel. United States v. Iron Eyes, 367 F.3d 781, 785 (8th Cir. 2004).

Griggs argues the jury instructions for Count 1, distribution of a controlled substance resulting in death, inaccurately stated the law regarding distribution resulting in death. The Supreme Court has said distribution of a controlled substance resulting in death has two elements: 1) knowingly or intentionally distributing a substance, and 2) death caused by the use of that substance. Burrage v. United States,

571 U.S. 204, 210 (2014). In this case, jury instruction number fourteen listed two elements for distribution of heroin: 1) intentionally transferring heroin, and 2) knowledge that the substance transferred was heroin. Jury instruction number fifteen instructed the jurors that if they found defendant guilty of distributing heroin they were to determine if the same heroin was the but for cause of Wilder's death. Both instructions specified that the government must prove the elements beyond a reasonable doubt. These instructions were accurate under Burrage.

Griggs also argues that the statements between Wilder and Schmitt were inadmissible hearsay. Specifically Griggs objects to one statement Wilder made to Schmitt—"We were waiting and then he had to sell to someone else. I had to stay in the car. And then I had to drive him back to the East Side." Griggs argues the statement was not sufficiently contemporaneous to qualify as a present sense impression. Fed. R. Evid. 803(1). We need not address Griggs's argument because even if the statement was improperly admitted, any the error was harmless. The two assertions in the objected-to portion of the conversations—that Wilder gave her dealer a ride and the timing of when she arrived home—were corroborated by other parts of the conversation between Schmitt and Wilder to which Griggs did not object. Since the admission of the evidence did not influence the verdict the error was harmless. United States v. Burch, 809 F.3d 1041, 1045 (8th Cir. 2016).

The remaining errors Griggs asserts do not necessitate a new trial. The district court did not abuse its discretion in denying a new trial or refusing to grant a directed verdict based on sufficiency of the evidence. The jury instructions as a whole advised the jury of the elements of the offenses and the burden of proof required. The evidence of a former conviction was properly allowed under Federal Rules of Evidence 404(b), with a limiting instruction.

## C. Sentence

Finally, Griggs appeals his sentence. We review factual findings underlying an obstruction-of-justice enhancement for clear error. United States v. Esparza, 291 F.3d 1052, 1054 (8th Cir. 2002). While Griggs was in jail he wrote a letter to a government witness. In the letter Griggs told the government's witness that if he was cooperating he was a "b---h" and "if you on my paperwork you can't go back to Waterloo and they f--k you up when you get to the Fed joint." The district court did not err by finding this letter demonstrated attempted obstruction of justice or by imposing a two-level enhancement under U.S.S.G. § 3C1.1.

Lastly, Griggs argues he should have received a downward variance due to his abusive childhood. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. St. Claire, 831 F.3d 1039, 1043 (8th Cir. 2016) ("A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal."(citation omitted)). The district court reviewed all the evidence that Griggs presents to this court and did not err in weighing the evidence differently than Griggs would have preferred.

## III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____